**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                                No. 4:11CR00168 JLH

JONATHAN RUSSELL WRIGHT                                    DEFENDANT

**OPINION AND ORDER**

Jonathan Russell Wright was convicted of one count of possessing crack cocaine with intent to distribution in violation of 21 U.S.C. § 841(a)(1). He was sentenced to life imprisonment based on a sentencing enhancement under 21 U.S.C. § 851. His conviction was affirmed on direct appeal. *United States v. Wright*, 739 F.3d 1160 (8th Cir. 2014). He has now filed a motion under 28 U.S.C. § 2255 to vacate or set aside his conviction, contending that his trial lawyer and his appellate lawyer were ineffective in failing to raise certain issues regarding the issuance of the search warrant pursuant to which the cocaine that resulted in his conviction was discovered.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his lawyer's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Proving that counsel was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689, 104 S. Ct. at 2065. Because of the distorting effects of hindsight and the difficulty of viewing counsel's representation of the client from the perspective available to defense counsel at the time of trial, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id*. Proving that the deficient performance prejudiced the

defense requires showing that there is a reasonable probability that, but for defense counsel's mistakes, the result of the proceeding would have been different. *Id*. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695, 104 S. Ct. at 2068-69. In determining whether there is a reasonable probability that but for counsel's mistakes the result would have been different, the Court must consider the totality of the evidence before the judge or the jury. *Id*. at 695, 104 S. Ct. at 2069.

  On April 17, 2011, at approximately 11:39 a.m., North Little Rock Police Officers Richard Gray and Matthew Thomas were dispatched to 2502 Wilshire Drive in North Little Rock in response to a security alarm. When they arrived at the scene, a large, flatscreen television was lying in the carport near the door of the house. The door into the house from the carport was slightly ajar, and there were pry marks on the doorframe near the door lock. The officers entered the house because of the possibility that the house might contain a victim or a suspect. As they entered the house, they smelled marijuana. In the northwest bedroom of the home, they saw two bags of a green, leafy substance, which appeared to be marijuana, in a partially open drawer of a chest. After Gray and Thomas completed the protective sweep, they exited the house, reported what they had seen to their supervisor, and waited for narcotics officers to arrive. The narcotics officers who subsequently came were lead narcotics investigator James Neeley and investigator Mike Brooks. When Neeley arrived, he told Gray to show him the marijuana, which Gray did. Neeley and Gray entered the house, saw the marijuana, and exited the house. Brooks and Neeley then prepared an affidavit for a search warrant and presented the affidavit to Judge Randy Morley at approximately 3:02 p.m.

Judge Morley issued a search and seizure warrant at approximately 3:04 p.m. After the warrant was issued, Neeley and Brooks returned to the residence to conduct the search, arriving at the residence to begin the search at approximately 3:13 p.m. During the search, they discovered not only marijuana but also the crack cocaine that resulted in Wright's conviction and sentence to a term of life imprisonment.

Before trial, Wright's trial lawyer filed a motion to suppress the evidence seized during this search, arguing that the evidence proved that the officers conducted a full search before obtaining the warrant and that the marijuana was not in plain sight.

Wright's first claim is that his trial lawyer was ineffective for failing to challenge the fact that the affidavit for the search warrant was not based on the personal observation of Neeley and Brooks but was rather based on the unsworn statements of Gray and Thomas. *See* Document #91 at 6-7. The Eighth Circuit has explained:

> Probable cause to search exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). In evaluating probable cause, a judicial officer reviewing an application for a search warrant does not use a hyper-technical approach. *Id*. Rather, he or she employs a totality-of-the-circumstances analysis and makes a practical decision based on such factors as the veracity of the affidavit and the basis of the knowledge of any person supplying hearsay information.

*United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009). Here, the affidavit for the search warrant states sufficient facts to establish probable cause for the issuance of the search warrant. *See* Document #91 at 19-20. The fact that it is based almost entirely on statements by Officers Gray and Thomas does not mean that it is insufficient to establish probable cause for the issuance of the warrant. Furthermore, even if the affidavit failed to establish probable cause the evidence would not have been excluded because it was objectively reasonable for the officers executing the search

warrant to have relied in good faith on Judge Morley's determination that there was probable cause to issue the warrant. *United States v. Hager*, 710 F.3d 830, 837 (8th Cir. 2013).

Wright's trial lawyer was not ineffective for failing to argue that there was no probable cause for the issuance of the search warrant, and if he had made that argument it would not have changed the result.

Wright next argues that his trial lawyer and his appellate lawyer were ineffective for failing to raise a claim regarding the entry by Gray and Neeley into the house after the first entry to investigate the burglary but before seeking a search warrant. This argument is based on the following portion of a concurring opinion in Wright's direct appeal:

> The second time police officers entered, there was no justification for the warrantless search. By the time the narcotics officers reached the scene, Wright's home was "secured," meaning "nobody could enter" or "disturb anything." Neither exigent circumstances nor public safety any longer justified a warrantless entry, *see Mincey v. Arizona*, 437 U.S. 385, 392-93, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), and the officers—having assured themselves no one was inside—could not think there was any risk the marijuana might be destroyed, *see Kentucky v. King*, 563 U.S. ——, ——, 131 S. Ct. 1849, 1858, 179 L. Ed. 2d 865 (2011). Yet Officer Gray reentered Wright's home, and Investigator Neeley entered for the first time, without a warrant. See ante at 1164. Investigator Neeley "[w]alked in, saw there was marijuana," then "said, 'Yes, come back on out. We're going to get a search warrant for the house.' " (Emphasis added). This second, warrantless entry was an obvious breach of the "firm line at the entrance to" Wright's "house." *Payton v. New York*, 445 U.S. 573, 590, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *see Mincey*, 437 U.S. at 394, 98 S. Ct. 2408 ("declin[ing] to hold that the seriousness of the offense under investigation itself creates exigent circumstances of the kind that under the Fourth Amendment justify a warrantless search").
>
> Nonetheless, Wright forfeited his right to relief for this Fourth Amendment violation because his counsel failed to raise the issue in the district court or even on appeal. *See*, *e.g.*, *United States v. Azure*, 539 F.3d 904, 912 (8th Cir. 2008). Notwithstanding this failure, our court has discretion to grant relief on plain error review if the violation "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (internal quotation omitted); *see* Fed. R. Crim. P. 52(b). For example, in *United States v. James*, 353 F.3d 606 (8th Cir. 2003), I joined Judge

4

> Richard S. Arnold's opinion reversing a conviction because "[n]ot doing so would . . . condone a stark violation of Fourth Amendment rights," *id*. at 612 (emphasis added). Although the Fourth Amendment violation here cannot be condoned, I conclude a similar exercise of plain error discretion is not justified in this case.
>
> The police ultimately collected the evidence used to convict Wright pursuant to a warrant. When police obtain a warrant based, in part or in whole, on information gleaned through an illegal search, the government may still use the evidence under the independent source doctrine if the government proves "both (1) that the decision to seek the warrant was independent of the unlawful entry—i.e., that police would have sought the warrant even if the [unlawful] entry had not occurred—and (2) that the information obtained through the unlawful entry did not affect the magistrate's decision to issue the warrant." *United States v. Khabeer*, 410 F.3d 477, 483 (8th Cir. 2005). The district court did not consider whether the warrant would have issued despite the violation. *Cf. Murray v. United States*, 487 U.S. 533, 542 n. 3, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988). Even if Wright had properly raised the issue, our court could do no more than remand for the district court to determine whether the government can meet its burden under *Khabeer*. Wright's failure to raise the issue forecloses this avenue of relief. *See*, *e.g.*, *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944) ("No procedural principle is more familiar . . . than that a constitutional right may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.").

*Wright*, 739 F.3d at 1172-73 (Riley, C.J., concurring).

Had this issue been raised, the Court would have made the decision to seek the warrant was independent of the unlawful entry and that the unlawful entry did not affect Judge Morley's decision to issue the warrant. First, there is no doubt that the North Little Rock Police Department would have sought a warrant based upon the discovery of marijuana in the house during the initial search. Officer Thomas testified:

> Q. And in your experience, typically if you say you smelled marijuana, that's enough to get you a search warrant, isn't it, or to justify a search of a vehicle if you're on patrol, usually. Right?
>
> A. Like if I smell it, correct.

Document #77 at 28. Thus, it was established at the hearing that the officers in question have experience in obtaining search warrants based on smelling marijuana. Here, they not only smelled


marijuana, they also saw it. Furthermore, the record establishes that the information obtained through the unlawful entry did not affect Judge Morley's decision to issue the warrant because the affidavit on which the search warrant was based never mentioned the second entry. The facts establishing probable cause were based on the observations of Gray and Thomas when they were in the house and a statement by Neeley and Brooks that they observed four surveillance cameras in various windows of the residence facing outside, which is something they saw from outside the house, not something that was seen during the unlawful entry. Document #91 at 19-20.

Wright's lawyers were not ineffective for raising this issue, and if they had raised it, it would not have changed the outcome.

Third, Wright argues that his trial lawyer was ineffective for not impeaching the witnesses based on an event history report by ADT and a North Little Rock Police Department dispatch report.

Wright contends that the ADT report shows that the investigators searched the house before 15:13 hours because the ADT record does not indicate further entries into the residence after 13:18:19, except when a roommate or girlfriend entered the residence at 19:50:05 and disarmed the entire active alarm system at 19:50:11. The ADT event history report shows that the alarm was activated in area 5 at 11:36:03 and in area 3 at 11:36:09. Thereafter, the event history report contains a series of entries indicating efforts to notify someone of the entry and to arrange for officers to be dispatched. At 13:18:19, the event history report shows that the alarm was suppressed because a report from the North Little Rock Police Department stated that the homeowner was in jail.[1] Document #91 at 42. The next entry then is at 19:50:05, when someone re-entered an

---

[1] Wright was in the Pulaski County Detention Center when the security alarm was activated and the subsequent search conducted.

authorized code. Wright is correct that the event history report does not show an entry by the investigators at 15:13 to conduct the search. Because ADT suppressed the alarm at 13:18:19 due to the fact that Wright was in custody at the time, an entry at 15:13 to conduct the search would not have triggered the alarm and therefore would not have triggered an entry into the ADT event history report.

As to the dispatch report from the North Little Rock Police Department, that report records the response to the ADT alarm that came in at 11:37:35. It shows when officers were dispatched in response to the alarm, when they were cleared, and so forth. That document does not report the sequence of events during the drug investigation that was precipitated by the discovery of marijuana in the house. Document #91 at 40-41. Wright points out that according to the report, Unit B33, whom he says is Thomas, left the scene at 14:37:34 and arrived at the property room at 14:45:41, which was prior to the search at 15:13. Thomas, however, testified that he took fingerprints from the television that was found on the carport and which apparently was the item that the burglar had attempted to steal. Document #77 at 23. He wrote a report regarding the taking of those fingerprints at 14:14. *Id*. at 24. He did not assist with the search conducted by the narcotics officers. *Id*. at 25. Nothing in the dispatch report is related to the burglary is inconsistent with the testimony of any of the officers who testified at the suppression hearing.

Wright's trial lawyer was not ineffective for failing to use the ADT event history report or the North Little Rock Police Department's dispatch report relating to the ADT call reporting the burglary. Neither document contains any information that would have changed the outcome of the suppression hearing.

Wright's trial lawyer challenged the search and seizure aggressively and intelligently, and he defended Wright aggressively and intelligently at trial. Similarly, Wright's appellate lawyer carefully considered which issues to raise on appeal and represented him professionally. Neither lawyer made errors so serious as to not be functioning as the counsel guaranteed to Wright by the Sixth Amendment. Nor would the outcome have been changed had they raised the issues that Wright says that they should have raised.

## CONCLUSION

Jonathan Russell Wright's motion under 28 U.S.C. § 2255 to vacate or set aside his conviction is without merit and is denied. Wright has failed to make a substantial showing that he was denied a constitutional right, so no certificate of appealability will be issued.

IT IS SO ORDERED this 3rd day of September, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE